# HOWARD CLARK *vs.* EDWARD Z. TOWER, CLERK OF THE CIRCUIT COURT, Etc.

*Intoxicating Liquors—Prohibition of Sale in this State Within a Certain Distance from a Point in Another State—Prohibition of Sale When Existing License to Sell is Unexpired.*

The Act of 1906, ch. 218, prohibits the sale of liquor at any place in Garrett County within five miles of Henry Station on the Western Md. Railroad. Henry Station is in West Virginia one hundred and fifty feet south of the dividing line between the States of Maryland and West Virginia. *Held*, that the Act is not invalid because Henry Station is not in this State and it is necessary to begin the measurement of the radius at a point in another State.

*Held*, further, that the sole object of the Act was not to affect the town of Henry, and that even if such was its object it was competent for the Legislature to make such prohibition.

The fact that under existing laws a party has obtained a license to sell liquor in a particular district does not affect the power of the Legislature to prohibit liquor selling in that district, although the license be unexpired and the value of the licensee's property is diminished by the prohibition. A license to sell liquor is not a contract but a mere permit subject to annulment at the pleasure of the Legislature.

*Decided  November 2d, 1906.*

Appeal from the Circuit Court for Garrett County (ROBERT R. HENDERSON, J)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER and BURKE, JJ.

*A. M. Cunningham* (with whom were *Gilmore S. Hamill* and *Edward H. Sincell* on the brief); for the appellant.

*Thomas J. Peddicord*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Garrett County dismissing the petition of the appellant for a writ of *mandamus* to be directed to the Clerk of that Court requiring him to issue a license under the provisions of ch. 610 of the Acts of 1890, notwithstanding the passage of the Act of 1906, ch. 218. The petition alleges that the appellant obtained a license on the 1st day of May, 1905, to sell spirituous and fermented liquors; that his place of business is located in Election District No. 8 of Garrett County and he was engaged in said business until May 1st, 1906; that on that day he applied to the Clerk for a license in accordance with the provisions of the Act of 1890, ch. 610 (which is the local liquor law for Garrett County), under which his previous license was granted; that he complied with the requirements of that Act but the Clerk refused and still refuses, to grant him a license, basing his refusal upon the provisions of the said Act of 1906.

The title to the Act of 1906 is "An Act to prohibit the sale of spirituous or fermented liquors or lager beer at any place in Garrett County within five miles of Henry Station, on the Western Maryland Railroad." Section 1 provides "That it shall not be lawful for the Clerk of the Circuit Court for Garrett County, Maryland, to issue a license to any person or persons, association or body corporate to sell spirituous or fermented liquors or lager beer at any place in Garrett County, within five miles of Henry Station, on the Western Maryland

Railroad," and by sec. 2 the Act took effect from the date of its passage, which was April 5th, 1906.

It is contended on the part of the appellant that it is inoperative, unconstitutional and void:

1st. Because of uncertainty, in that there is no village, town or station known as Henry Station on the Western Maryland Railroad, within the limits of Garrett County, Maryland, but there is a place known as Henry Station in Grant County, West Virginia, which petitioner supposes is the place intended as the beginning point of the radius.

2nd. Because, in order to locate the boundary of the prohibited territory mentioned in said Act, it is necessary to begin the measurement of the radius at Henry Station, a point outside of the State of Maryland, and within the State of West Virginia, where the petitioner avers the Legislature of Maryland has no jurisdiction and no constitutional power to fix said beginning point.

3rd. Because Henry Station is in West Virginia, and the sole and only object of said Act was to affect the town of Henry, and was an attempt to legislate for that particular place.

4th. Because said Act strikes down and destroys petitioner's business, "and its effect is to practically deprive him of his property without due process of law as contemplated by the Constitution" of this State and that of the United States, particularly the Fifth and Fourteenth Amendments to the latter.

At the argument it was also contended that the Act did not comply with Article 3, sec. 29, of the State Constitution. We confess our inability to understand the ground of that objection. The title uses the very words employed in the body of the Act, in describing the articles prohibited from being sold and the territory to be affected. It is "An Act to *prohibit* the sale," etc., and sec. 1 prohibits the Clerk from issuing licenses. As he is the officer of the law from whom the licenses must be obtained, the enactment by the Legislature that it shall not be lawful for him to issue those described

in the Act is in exact accord with the title, and does, in the most effective way, attempt to prohibit the sale of liquor in that territory. Without citing any of the numerous cases which have been before this Court involving the construction of that provision of the Constitution, we will proceed at once to the other objections, in the order mentioned above, as we have no doubt about the sufficiency of the title.

1. The Act does not say that Henry Station is in Garrett County, or in Maryland, but it speaks of it simply as "Henry Station, on the Western Maryland Railroad." It is not pretended that there is any other Henry Station on that railroad—certainly not near Garrett County—and the appellant filed with his petition what is therein called "a rough diagram of the location of said Henry Station with reference to the boundary line dividing the State of Maryland from the State of West Virginia." The record shows that it was agreed between counsel at the hearing below that Henry Station is in Grant County, West Virginia, and that the Western Maryland Railroad at that point is also, about one hundred and fifty feet from the Maryland line. There is nothing to suggest any uncertainty as to the place intended by the statute, and the petition itself shows that it was thoroughly understood by the appellant, as indeed he bases some of his objections to the Act of 1906 on the fact that Henry Station is in Grant County, West Virginia.

2. It is not unusual in this State to prohibit the sale of liquor within certain distances from points named in statutes. Quite a number of such Acts were passed at the session of 1906, and the Act of 1890, under which the appellant had a license for 1905, prohibits the sale of liquor within one mile of Mountain Lake Park. Indeed there are perhaps few counties in this State, where liquor is sold at all, which do not have such provisions as to some places within their bounds. The principal difference between this Act and others is that most of them name some point within the State of Maryland, but why that should make the Act unconstitutional or inoperative we fail to see. The Legislature of Maryland did not

attempt to legislate for West Virginia, or any part thereof. The Act in terms limits the prohibition to "*any place in Garrett County* within five miles," etc. There can be no possible difficulty by reason of the fact that the beginning point of the radius, which fixes the limits within which the sales are prohibited, is in West Virginia, and hence beyond the jurisdiction of Maryland. It cannot be assumed that one of the United States would be so devoid of comity between States, as to undertake to prohibit residents of another State from making such measurements along its public roads, or over private property, if consented to by the owners, as this Act might require, but regardless of the question whether a State could make such a discrimination against non-residents, or whether there would be any difficulty in procuring residents of West Virginia to make them, for all practical purposes the distance from Henry Station to the Maryland line could be accurately determined from points in Maryland. The agreement in this record, as we have seen, admits that Henry Station is only 150 feet from the Maryland line, and it would indeed be an ignorant surveyor who could not calculate the distance with sufficient accuracy from the Maryland side of the river, without even going into West Virginia. As will be seen by reference to 17 *Am. and Eng. Ency. of Law*, 214, statutes prohibiting sales of liquor in certain localities, or within a designated distance from some church, school, town, or other named place, have been frequently upheld, and it was said in *Fell* v. *State*, 42 Md. 89, that it cannot "be doubted that the Legislature has power to prohibit the sale of spirituous or fermented liquors in any part of the State." Having that power, it would indeed be remarkable if a statute prohibiting the sale of liquor within a prescribed territory must be declared invalid because one end of the radius fixing that territory is in another State. No possible question could arise as to whether the appellant's place of business is within the five miles, for the plat filed with the petition shows it is within a few hundred feet and the agreement of counsel admitted that it was within the five miles, but if a case arises in which it is

doubtful whether the proposed place of business is within the
five miles, the applicant would have to satisfy the Clerk that
it was not, and if he applied to the Court for a *mandamus*
against the Clerk, it would require proof of the fact just as it
would in any other case. It would not be necessary to pro-
ceed as we do in cases where there is defense on warrant, but
the measurement could be made by any competent person or
persons, and there could be no possible difficulty in determin-
ing how much of the radius of five miles was in West
Virginia.

3. We find nothing in this Act which would justify us in
holding that its sole and only object was to affect the town of
Henry, or that it was an attempt to legislate for that particular
place. As the Legislature has undoubted power to prohibit
the sale of liquor within any part of the State, it must be pre-
sumed that in its judgment there was sufficient reason for the
passage of this statute. But we cannot admit that the Legis-
lature of Maryland could not pass such a law, even if its prin-
cipal object was to benefit some town or village in another
State. Of course, it could not prohibit sales in any part of
another State, but if the sale of liquor is prohibited by the
laws of West Virginia in some town or village near the Mary-
land line, why conld not the Maryland Legislature prohibit such
sales on the Maryland side of the line, even if it be primarily for
the benefit of the town or village in West Virginia? If, for exam-
ple, the sale of liquor was prohibited in Piedmont by the West
Virginia laws, can it be doubted that the Legislature of Maryland
could prohibit such sales in Westernport, or other places in
Maryland within some designated distance from Piedmont? Of
course, it could not be required to do so, but it would certainly
have the power, if it deemed it desirable. Take points along the
Western Maryland Railroad as examples. That road runs near
the Potomac river for many miles, and crosses it a number of
times—going from one State to the other. Could there be any
possible objection—constitutional or otherwise—to the two
States prohibiting the sale of liquor in their respective jurisdic-
tions, in localities where that was thought desirable? If so, the

legislation of one State would oftentimes amount to a mere farce, for all that would be necessary for a person who could not get a license on one side of the river would be to cross over to the other side, obtain a license there and open a saloon. That would not only enable persons living in the territory where the sale of liquor was prohibited to conveniently obtain it, but as the saloon might be located where there was no police protection it would likely result in disorder, and probably in more drunkenness than if it was on the side of the river where the patrons of the saloon lived. People may honestly differ about the wisdom of prohibitory legislation, but when such laws are passed, Courts should not place constructions on them which in effect make them nugatory, unless they exceed the powers of the Legislature, are in conflict with the rights protected by the Constitution of the State or of the United States, or for some reason are clearly invalid.

4. The fourth ground assigned for declaring this statute invalid is also untenable. It is, of course, to be regretted, if the appellant sustains loss by reason of his investment in improvements erected by him for the purpose of conducting this business, but that was a risk he assumed. In *Fell's case, supra,* this Court said that the Legislature had the power to prohibit the sale of liquor in any part of the State "notwithstaning a party to be affected by the law, may have procured a license, under the general license laws of the State, which has not yet expired. Such a license is in no sense a contract made by the State with the party holding the license. It is a mere permit, subject to be modified or annulled at the pleasure of the Legislature, who have the power to change or repeal the law under which the license was granted." Unless we overrule that decision it would seem to be a complete answer to the objection to the statute now under consideration. There is no reason for disturbing or modifying it, for it is not only the well recognized law of this State, and has been followed over and over again, but it is in harmony with the decisions of the Courts of many other jurisdictions. That such legislation does not deprive a person of property without due process of

law, simply because it diminishes the value of property owned before the enactment of the statute, has been decided by the Supreme Court of the United States in *Mugler* v. *Kansas*, 123 U. S. 623 and by other Courts. In 18 *Am. & Eng. Ency. of Law*, 207, many cases are cited disposing of objections similar to those made against this statute. In the comparatively recent case of *Parker* v. *State*, 99 Md. 189, numerous authorities were cited by the respective attorneys, and JUDGE FOWLER in delivering the opinion said, "Even the counsel of the traverser conceded the plenary power of the State to abolish and destroy the liquor traffic or to suppress the evils of intoxication at certain places, or at certain times or to certain classes of persons." In order to sustain the position of the appellant, local option and similar laws which have been upheld by this and other Courts would have to be stricken down. There is no longer any question in this State about the validity of such legislation as that now before us, and it would be uselsss to further prolong this opinion. The order dismissing the petition will be affirmed.

> *Order affirmed, the appellant to pay the costs.*