Jersey City Gaslight Co. *v.* Consumers Gas Co.

The Jersey City Gaslight Company

*v.*

The Consumers Gas Company of Jersey City.

1. Public grants are to be strictly construed, and whatever is not plainly granted must be understood to have been withheld.

2. In construing a statute a purpose to disregard sound public policy must not be attributed to the law-making power, except upon the most cogent evidence.

3. A complainant is not entitled to a preliminary injunction to protect a right which depends on a disputed question of law.

4. The charter of a corporation will not be declared to be forfeited except in a proceeding instituted directly for that purpose, by the government granting the charter.

5. In the absence of legislation conferring jurisdiction upon other tribunals, the common law courts have exclusive jurisdiction of all questions relating to the forfeiture of franchises.

On application for an injunction, heard on bill and affidavits on the part of the complainants, and affidavits on the part of the defendants.

*Mr. Randal Morgan,* of Philadelphia, and *Mr. Joseph D. Bedle,* for complainants.

*Mr. Peter Bentley* and *Mr. James B. Vredenburgh,* for defendants.

VAN FLEET, V. C.

This is an application for an injunction. The litigants are corporations organized to manufacture and supply illuminating gas. Although other corporations than the Jersey City Gaslight Company and the Consumers Gas Company of Jersey City are parties to the suit, the questions in dispute will be considered as though the two corporations just named were the only litigants. This course will allow the only question now at issue between the parties to be presented in its simplest form, and save the necessity of adverting to facts quite immaterial to the present inquiry.

The complainants (the Jersey City Gaslight Company) were incorporated in 1849, by special charter. *P. L. of 1849 p. 279.* They have power to manufacture and sell gas, and to use the streets and public grounds of Jersey City to lay pipes to supply gas. The defendants (the Consumers Gas Company of Jersey City) are a corporation organized under the general law authorizing the formation of gaslight corporations. *Rev. p. 460.* Their articles of association were filed December 1st, 1883. They, too, have authority to use the streets and public grounds of Jersey City to lay pipes to supply gas, provided they first obtain the consent of the municipal authorities. The defendants have obtained such consent, and have laid their pipes, and are now supplying such of the citizens of Jersey City as choose to purchase their gas. The complainants' charter does not prescribe the quality of the gas which they shall furnish, nor is any duty, in that regard, imposed upon them by any other statute. They are at liberty to furnish gas of any quality they please. The defendants, however, have not the same liberty. The statute under which they are organized prescribes the quality of the gas which they shall furnish, both in respect to its illuminating power and its purity, and declares that they shall be subject to a penalty of $100 a day for each and every day that the gas supplied by them is not in accordance with the requirements of the

statute. *Rev. p. 462 § 18; Rev. p. 1341 § 1.* The complainants charge that the gas which the defendants are supplying does not come up to the standard prescribed by the statute, and they say,. moreover, that the defendants have never made gas of the purity required by the statute.   For present purposes, this charge will be considered to be true.   A cursory examination of the affida-vits certainly leads to that result.   This fact constitutes the whole of the equity on which the complainants' present application rests.

The argument by the complainants' attempt to vindicate their right to an injunction in this case is this : They say the legisla-ture, in enacting the statute under which the defendants were organized, did not intend to authorize or permit corporations formed under that statute to compete with existing corporations,. specially chartered, unless such new corporations furnished gas. of the quality prescribed by the statute, and they therefore insist that the defendants, in furnishing gas of a quality below that which the statute requires, are carrying on an unlawful competi-tion with them, and thus doing what amounts, in its practical effect, to an invasion of their franchise.   Or, to state the com-plainants' contention in a more direct form, they say that, in order to give full effect to the legislative purpose, the statute must be read as though that part of it which prescribes the quality of the gas to be furnished contained words expressly declaring that no corporation organized under the statute shall have the right to supply gas to any locality where gas is already supplied by a corporation specially chartered, unless the gas which it supplies shall be of the quality prescribed by the statute.

The complainants claim a conditional monopoly.   That is what their claim, plainly stated, amounts to.   They say that unless the defendants furnish gas of a specified quality they alone are to have the right to supply the citizens of Jersey City with gas. Whenever a suitor asserts a right of this nature, as the founda-tion of his right to relief, he must produce, in support of his. claim, a plain grant, or fail.   To doubt, in such a case, is to deny. It is a cardinal rule of construction that all public grants are to be strictly construed, and that whatever is not plainly granted

shall be understood to be withheld. An attentive perusal of the statute under consideration fails to present to my mind the least evidence that the legislature, in passing it, had any such purpose in view as that attributed to them by the complainants. A contrary purpose seems to be plainly manifest. The twenty-second section (*Rev. p. 463*) expressly provides that whenever a corporation shall be organized under this statute, to supply gas to any city, town or village which is already supplied with gas, that the new corporation shall, within certain periods fixed by the statute, extend their main pipes so as to supply all persons of that particular locality with gas. And the object of this provision is declared to be " that all may enjoy the benefits of competition." The twenty-fifth section (*Rev. p. 464*) then declares:

" That no exclusive privilege heretofore granted in the charter of any company to construct and operate gas works shall hereafter continue to be, or be construed to remain exclusive."

The object of these provisions cannot be misunderstood. They were designed to abrogate all exclusive or monopoly privileges, and to free competition in the supply of gas.

But if the statute did not contain these provisions, I still think the complainants' construction could not be adopted. Their construction ascribes to the legislature a design to discriminate against the public, and in favor of a few persons of a particular class. The complainants are at liberty to furnish gas of any quality they see fit, while the defendants, to escape daily penalties, must furnish it of a specified quality. There is no reciprocity of duty, in respect to the quality of the gas to be furnished, between the complainants and the defendants. The one is free and the other is bound. So that, to adopt the complainants' construction, we must say that the legislature meant there should be no competition between existing corporations and corporations organized under this statute, except upon very unequal terms, with all the advantages in favor of existing corporations. Such a purpose is so manifestly opposed to sound public policy, so contrary to the spirit of our laws, and so clearly in conflict with

popular judgment, that it should not be attributed to the legislature, except upon the most cogent evidence.

But suppose this view to be erroneous, and let it be conceded that there are expressions in the statute which support, to some extent, the complainants' construction, then their attitude before the court would be this : they would be asking the court to protect them, by injunction, in the enjoyment of a right which, as yet, is unsettled and undetermined. Now, nothing is better settled, as a rule of equity procedure, than that a complainant is not entitled to a preliminary injunction to protect a right which depends · on a disputed question of law, and which question has never been adjudged in his favor by the courts of law of this state. *Citizens Coach Co.* v. *Camden Horse R. R. Co., 2 Stew., Eq. 299.*

But there is another objection to the complainants' application quite as fatal as either of the other two. The defendants are a corporation *de jure*. It is not denied, by anything which is entitled to be regarded as proof, that they are a legal corporate entity. As a corporation *de jure*, with their powers in full vigor, they have a lawful right to manufacture and sell gas, and to use the streets and public grounds of Jersey City to transmit gas to their customers. If they furnish gas of a quality inferior to that which the statute makes it their duty to furnish, their delinquency may constitute such a misuse or abuse of their franchises as would justify the state in instituting proceedings to have their franchises declared forfeited. But that is a matter in which the complainants have no concern, and a wrong over which this court has no jurisdiction. It is an established principle of the law concerning corporations that the charter of a corporation will not be declared to be forfeited, for misuse or abuse of its powers, except in a proceeding instituted directly for that purpose, by the government granting the charter. In such matters the courts will never act on the relation of any individual, and the reason is that the matter is one which concerns the state alone. The state may exact the forfeiture, or waive it, as may seem best to it for the public interests. *2 Kent's Com. 313 ; Commonwealth* v. *Union Ins. Co., 5 Mass. 230 ; Boston Glass Manufactory* v.

*Langdon, 24 Pick. 49; Folger* v. *Columbian Insurance Co., 99 Mass. 267; Kishacoquillas Turnpike Co.* v. *M' Conaby, 16 Serg. & R. 140; Attorney-General* v. *Utica Insurance Co., 2 Johns. Ch. 371; Slee* v. *Bloom, 5 Johns. Ch. 366.* The question whether a corporation has forfeited its franchises or not is one over which the common law courts have exclusive jurisdiction, and over which this court has no control whatever in the absence of legislation. *National Docks R. R. Co.* v. *Central R. R. Co., 5 Stew. Eq. 755.* To give the complainants the writ they ask would be to deprive the defendants of the right to exercise their franchise, and this court would thus pronounce a judgment which, in its practical effect, would amount to a judgment of forfeiture. No judicial tribunal can do, by indirection, what it has no authority to do directly.

But I think it should be said, in addition, that if the defendants have been guilty of a breach of their statutory duty, their misconduct has not resulted in legal injury to the complainants. The complainants are not consumers of the gas furnished by the defendants; no contract relations exist between them and the defendants, and so, if the defendants are not performing the whole measure of their statutory duty, their delinquency does the complainants no harm. That provision of the statute which prescribes the quality of the gas which corporations organized under it shall supply, was obviously designed for the benefit and protection of such persons as should become consumers of their gas, and such persons are the only persons who can be injured by its violation. Its violation invades no right of the complainants and deprives them of nothing which the law secures to them; consequently it cannot be made the basis of any sort of judicial relief to them.

For all these reasons the complainants' application must be denied, with costs.